McKENZIE et al., Appellants, v. BIRKHOLTZ et al., Respondents

(50 N. W.2d 95)

(File No. 9177. Opinion filed November 20, 1951)

**Loucks & Oviatt,** Watertown, for Appellant.
**Ralph A. Dunham,** Clark, for Respondents.

LEEDOM, J. This is an action to quiet title to real estate. Two of the plaintiffs are daughters of the deceased former owner Minnie C. Birkholtz and the other four are her grandchildren, all claiming title as her heirs. The principal defendant Clyde A. Birkholtz is a son of the decedent and a brother and uncle of palintiffs. He claims the right to acquire the property under an agreement with the defendant Midland National Life Insurance Company, grantee in a deed executed by Minnie C. Birkholtz about five months before her death at age 83. The ultimate question in the dispute between the parties is whether the deed divested Mrs. Birkholtz of title enabling Clyde to acquire it under his agreement with Midland National Life, or whether she retained title at her death with the property passing to her heirs, including Clyde, under the laws of succession. The principal question presented in the record on this appeal is whether or not the trial court erred in finding there was no

delivery of the deed to Midland National Life. Other questions than this one are presented but we do not reach them inasmuch as it is our opinion the circuit court's finding of nondelivery of the deed constitutes reversible error.

Except as to the question of intent, the record shows virtually no dispute in the facts bearing on delivery. The deed is a warranty deed regular in all respects as to form reciting $1 and other valuable consideration. It was duly signed and. acknowledged by Minnie C. Birkholtz. It was read by the grantor before she signed it and immediately after signing it she handed it to her son the defendant Clyde A. Birkholtz. She gave. him no oral instruction at that time to deliver it to Midland National Life Insurance Company, grantee named therein. Neither is there evidence that she orally instructed him not to deliver it to the grantee or that she in any manner retained any control over it. Within twelve days of the day it was thus signed the deed was delivered to the Midland National Life by Clyde. It was recorded on November 19, 1945 in Clark County where the land is situated.

Mrs. Birkholtz died April 27, 1946 in the home of Mrs. R. E. Gregg who had cared for decedent there since October 1 preceding the death. The deed was signed in this home. Previously decedent had lived with the appellant son Clyde and his family at his farm home near the land here involved. While she was in Mrs. Gregg's home, Mrs. Birkholtz was in declining health due to old age but not sick. She was mentally alert. Clyde and his children visited her there. Respondent grandchildren never lived at the Birkholtz home place near this land, and the latest either of the respondent daughters had lived there was 1918.

In 1941 Mrs. Birkholtz had mortgaged this property to Midland National Life for $1,700. Clyde had signed the mortgage note with her as required by Midland. The check of Midland National Life remitting the loan proceeds was payable to the order of Minnie Birkholtz. It may have been mailed to her or delivered to Clyde personally.

Prior to the execution of the deed officers of Midland had talked with Clyde about it. Still later they agreed on payment of the $1,300 balance of the mortgage debt by Clyde

to transfer title to him. This agreement was in the form of a letter from Midland National Life to Clyde dated the same date the deed bears, November 7, 1945. Clyde has paid taxes on the land including those for 1945 and has been in possession since the deed was delivered to Midland. He paid the balance owing on the mortgage debt on August 22, 1947, a year and two days after the due date. Midland National Life had neither filed a satisfaction of mortgage nor delivered a deed to Clyde when this suit was started on June 5, 1948, but in its separate answer and in its proof Midland indicates a readiness to satisfy the mortgage and to convey by deed according to the court's direction; also that it claims no beneficial interest whatever in the property and holds only the legal title by virtue of the Minnie C. Birkholtz deed.

Appellant offered his own and testimony of other witnesses relative to conversations had with the deceased Minnie Birkholtz about the transaction. Respondents objected to the admission of all statements attributed to the decedent. The court admitted certain such statements subject to the objection and rejected others. The record does not disclose whether or not the trial court treated the statements thus admitted as competent evidence except as a rejection of such evidence might be inferred from the judgment entered, adverse to appellant. Because of this state of the record and because we do not deem the decedent's statements essential to our conclusion, we have wholly disregarded this part of the record.

We have given due consideration to the finding of the trial court that the deed was not delivered. In our view however the record shows by a clear preponderance of the evidence that Minnie Birkholtz intended to deliver the deed to the grantee. From the record we must assume she signed the deed for a useful purpose. We must also conclude that she realized the import of the instrument she signed and knew the identity of the named grantee. As to these points there can be no doubt. They, coupled with the grantor's absolute release of all control of the deed in handing it to Clyde without restrictive instructions, narrow the choice of conclusions to the one that she intended to present-

ly vest the named grantee with title to her property. If the processes by which such intent was formed were induced in any degree by undue influence from Clyde this record does not reveal such fact.

Any other conclusion is unwarranted unless reliance is given to Clyde's opportunity to unduly influence his mother or unless undue significance is attached to the mother's failure to orally instruct Clyde to deliver the deed to the grantee.

In the whole record only two elements militate against an intent to deliver the deed to Midland National Life. One has to do with the opportunity disclosed in the record for Clyde to unduly influence his mother and obtain delivery under duress. The other factor is part of Clyde's cross examination referring to the time immediately following his mother's reading and signing the deed and handing it to him. He was asked: "Did your mother tell you to deliver this deed to the Midland National Life Insurance Company of Watertown?" Clyde answered: "She did not." Giving to both of these factors all the consideration to which they are entitled under the law, as hereafter appears, the whole record still shows a clear preponderance of the evidence in favor of a delivery of the deed.

As to undue influence, respondent virtually pleads delivery of the deed and alleges it was under duress. The record however does not show duress and the court made no finding of duress or fraud or undue influence. Opportunity alone for the exercise of undue influence does not warrant setting aside a deed. See Ansted v. Grieve, 57 S. D. 215, 231 N.W. 912, 914 and the cases there cited; also Meyer v. Kiecksee, 68 S. D. 43, 298 N.W. 261. These authorities nullify undue influence as a factor in our decision.

Without expressly dealing with an absence of express words of instruction where a grantor delivers a deed to a third person this court had said: "Whether there was a delivery is a question of intent to be found from all the facts surrounding the transaction." McGillivray v. Wipf, 64 S. D. 367, 266 N.W. 724, 725. In Birchard v. Simons, 59 S. D. 422, 240 N.W. 490, 492, it is stated: "If there is a concurrent act of both parties, an intent on the part of the

grantor to divest himself of title and an intent on the part of the grantee to accept title, there is a complete delivery." In this same case this court quoted with approval a rule from 8 R.C.L. 978 in which it is stated that intention "has been called the essence of delivery". Under the record in this appeal there was a delivery of the deed here involved according to the standards set up by these cases. Acceptance here by the grantee is undisputed.

 Words of instruction to deliver a deed to the grantee are unnecessary when it is handed to a third person if the intention that it be delivered to the grantee is clearly indicated otherwise. The rule is stated thus in Thompson on Real Property, Permanent Edition, § 4167.

"An intention on the part of the grantor to deliver a deed may be manifested by the circumstances surrounding the transaction, no particular words or acts being essential."

This authority cites the McGillivray case, above.

In addition to the foregoing it is our opinion delivery of the deed is established under the provisions of SDC 51.-1307 which provides:

"**Constructive delivery.** Though a grant be not actually delivered into the posession of the grantee, it is yet to be deemed constructively delivered in the following case: * * *

"(2) Where is is delivered to a stranger for the benefit of a grantee, and his assent is shown or may be presumed."

This section is a codification of a recognized rule summarized thus in 26 C.J.S. Deeds, § 43:

"Delivery to a third person is sufficient if made for, and on behalf of, the grantee, to one not acting solely as the grantor's agent, with express or implied instructions to the depositary to deliver the deed to the grantee; and it is immaterial that the grantee has not authorized such person to receive the deed provided he subsequently assents thereto."

 Because of our decision on the question of delivery we do not reach certain other questions raised on the

appeal. Inasmuch however as respondents contend that their position on either of two other phases of the case, if sustained, would support the result reached by the trial court, we express our views: (1) That the transfer to Midland National Life does not fail for lack of consideration; Bernardy v. Colonial & United States Mortg. Co., Limited, 17 S. D. 637, 98 N.W. 166; and (2) Midland's written memorandum to Clyde Birkholtz meets respondents' contention that the transaction is invalid under the law relating to trusts; SDC 59.0303; Scott on Trusts § 42.2; Restatement, Trusts § 42(b) (i) Comment e.

The judgment of the circuit court is reversed.

All the Judges concur.